35 C.C.P.A. (Patents)

## Application of KINNEY et al.

### Patent Appeal No. 5477.

Court of Customs and Patent Appeals.
June 14, 1948.

Murray, Sackhoff & Paddack, and Walter F. Murray, all of Cincinnati, Ohio (Walter S. Murray, of Cincinnati, Ohio, of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (J. Schimmel, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 2, 3, 4, 18, and 19 in appellant's application for a patent for an invention relating to a homogenizer on the ground of lack of invention over prior art. Claims 7 to 11, inclusive, 13 to 17, inclusive, and 20 were allowed by the Primary Examiner.

Claims 2 and 18 are representative of the appealed claims. They read:

"2. In an homogenizer the combination of a plurality of spaced compressor elements, means for forcing material between the elements, and means for mutually reciprocating said elements.

"18. In an homogenizer the combination of an elastic body having opposed and continuous compressor elements disposed in spaced relationship, means for passing material between the elements, and reciprocating means for compressing and expanding the body."

The references relied on are: Oehninger (Swiss) 176,438 April 15, 1935; Williams 2,170,178 August 22, 1939.

· The homogenizer disclosed in appellants' application comprises a cylindrical casing having an inlet opening at one end and an outlet opening at the other. Within the casing, and arranged axially thereof, are two coil springs formed of flat strip material, the springs being located at opposite ends of the casing, with one end of each spring abutting the corresponding end of the casing. The opposite ends of the springs are secured to a plunger member which is mounted for reciprocating movement axially of the casing and which, when reciprocated alternately expands and compresses each of the springs. The fluid to be homogenized enters the casing through the inlet opening where it is agitated between

the coils of the springs and finally escapes through the outlet opening.

The Swiss patent to Oehninger discloses a mixing device in which the fluids to be mixed are fed into a chamber containing a coil spring. The patentee states that the fluid mixture passes through the windings of the spring "so that a very good mixing is effected." It is further stated in the patent that the cross section of the wire of which the spring is made "may show any optional form and need by no means be round." In one form of the device the spring is connected with an operating lever, by means of which it may be compressed or expanded.

The patent to Williams discloses a homogenizer comprising a chamber located between a diaphragm and a cover. The fluid to be homogenized flows into this chamber and the diaphragm is vibrated at a frequency of about 276 cycles while the cover vibrates at a frequency of about 436 cycles, thus agitating and homogenizing the fluid.

Claims 2, 3, and 4 were rejected on the patent to Williams. Each of those claims calls for a homogenizer comprizing compressor elements and means for "mutually reciprocating" those elements. In the device of the Williams patent the cover and diaphragm are vibrated or reciprocated at different rates. This of course, would result in some relative movement between them but such movement is irregular and this irregularity is relied on by the patentee as promoting cavitation. In appellants' application, on the other hand, the relative movement between the coils of the springs is regular and produces a uniform action on the material being treated. The device of Williams and that of appellants are, therefore, essentially different in operation.

We are of opinion that the expression "mutually reciprocating", as it must be construed in the light of appellants' application, requires a regular movement of the compressor elements relatively to each other, and that it should not be so broadly construed as to cover two elements which are reciprocated at different rates of speed. The word "mutual," as used by appellants, implies that there is a correspondence between the reciprocations, so that for a given movement of one of the reciprocating elements, there is a corresponding movement of the other. This is not true in the device of the Williams patent and, in view of this fact and of the basic difference in operating principle between the Williams structure and that of appellants, we are of opinion that claims 2, 3, and 4 are patentable over the structure disclosed in the Williams patent.

Claims 18 and 19 were rejected on the Swiss patent to Oehninger. Those claims call for an elastic body having opposed compressor elements and reciprocating means for moving those elements. In rejecting claims 18 and 19, the Patent Office tribunals have relied on the coils of the spring of the reference patent as compressor elements. It is clear, however, that the patentee did not contemplate that those coils should have any compressing function. The means which he provides for compressing or expanding the spring is merely an adjusting means for varying the distance between the coils of the spring. There is nothing to suggest that there is to be any such movement of the spring during the mixing operation as would result in a compressing action, and the fact that a round wire is used for the spring in the preferred embodiment of the patentee's invention affords a further indication that no compression is intended, since there could be very little, if any compression of fluid between the coils of round wire.

Since the Oehninger patent contemplates an entirely different type of operation from that of appellants' application, and since the patent does not disclose any parts fairly corresponding to the compression elements called for by claims 18 and 19, we are of opinion that those claims were not properly rejected on that patent.

For the reasons stated, the decision of the Board of Appeals is reversed.

Reversed.

By reason of illness, O'CONNELL, Judge, was not present at the argument of this case and did not participate in the decision.